Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000684
30-MAY-2018
07:49 AM

NO. CAAP-16-0000684

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
ANTONIO GANITANO, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 15-1-1721)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Leonard and Reifurth, JJ.)

Defendant-Appellant Antonio Ganitano (**Ganitano**) appeals from the Judgment of Conviction and Probation Sentence (**Judgment**) entered against him and in favor of Plaintiff-Appellee the State of Hawai'i (**State**), which was entered on October 5, 2016, in the Circuit Court of the First Circuit (**Circuit Court**).[1]

After a jury trial, Ganitano was convicted of two counts of sexual assault in the third degree, in violation of Hawai'i Revised Statutes (**HRS**) § 707-732(1)(c) (2014).[2]

---

[1] The Honorable Glenn J. Kim presided.

[2] HRS § 707-732(1)(c) provides in relevant part:

    **§ 707-732 Sexual assault in the third degree.** (1) A person commits the offense of sexual assault in the third degree if:
    . . . .
    (c) The person knowingly engages in sexual contact
                    (continued...)

On appeal, Ganitano asserts three points of error, contending that: (1) the State did not introduce substantial evidence of Ganitano's age; (2) the complaining witness's (**CW**) testimony was not credible and therefore did not constitute substantial evidence to support the convictions; and (3) the deputy prosecuting attorney (**Prosecutor**) committed prosecutorial misconduct during closing argument, which deprived Ganitano of his right to a fair trial.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Ganitano's points of error as follows:

(1) Ganitano contends that: (1) under the statute for which he was convicted, Ganitano's age could not have been proven through circumstantial evidence; and (2) there was not substantial evidence of his age. The State contends that there was sufficient evidence that Ganitano was not less than five years older than CW.

HRS § 707-732(1)(c) (2014) provides in relevant part:

> **§ 707-732 Sexual assault in the third degree.** (1) A person commits the offense of sexual assault in the third degree if:
> . . . .
> (c) The person knowingly engages in sexual contact with a person who is at least fourteen years old but less than sixteen years old or causes the

---

[2](...continued)

> with a person who is at least fourteen years old but less than sixteen years old or causes the minor to have sexual contact with the person; provided that:
> (i) The person is not less than five years older than the minor; and
> (ii) The person is not legally married to the minor;

minor to have sexual contact with the person;
provided that:
(i)     The person is not less than five years
        older than the minor; and
(ii)    The person is not legally married to the
        minor;

(Emphasis added).

Here, CW testified that she was fourteen years old at the time of the alleged incidents. Joven Ramelb (**Joven**), CW's father, testified that Ganitano's daughter was "about the same age" as Joven's other daughter, Jackelyn Ramelb (**Jackelyn**). Jackelyn testified that she was twenty-seven years old at the time of trial, which took place approximately two years after the alleged incidents. Joven also testified that he had known Ganitano for "almost ten years" and that after knowing him for a "couple of years" he began to work with Ganitano at Royal Hawaiian Movers. Further, Jovites Lorenzo (**Jovites**), another of CW's older sisters, testified that Joven and Ganitano had been friends since Joven and the family lived in Waipahu, which was when CW was approximately one-and-a-half to two years old.

Ganitano provides no authority for his assertion that the age difference may not be proven through circumstantial evidence, and we find none.

Based on the evidence adduced at trial, we conclude that the State introduced credible evidence which was of sufficient quality and probative value to enable a person of reasonable caution to support the conclusion that Ganitano was not less than five years older than CW. See, e.g., State v. Grace, 107 Hawai'i 133, 139, 111 P.3d 28, 34 (App. 2005).

(2)    Ganitano next contends that CW's testimony was not credible and therefore did not constitute substantial evidence because:   (1) she did not report the August 2 or 3, 2014 incident until over one year later; (2) she did not call or text her family members on August 9, 2014, but instead posted on various social media sites that she was scared and "[c]an somebody please come over and stay with me," where there was no guarantee that anyone would read the post; (3) she did not cry out or scream during the August 2 or 3, 2014 incident, even though a family member was reportedly at home; and (4) Ganitano's conduct of staying at the family's home, instead of fleeing, and then helping Joven put away the groceries was inconsistent with CW's allegation of sexual assault.

"In a jury trial, the jury is the trier of fact and, thus, is the sole judge of the credibility of the witnesses and the weight of the evidence." State v. Jhun, 83 Hawai'i 472, 483, 927 P.2d 1355, 1366 (1996) (citation omitted).  "When reviewing a jury trial, an appellate court will not pass upon the jury's decisions with respect to the credibility of witnesses and the weight of the evidence, because this is the province of the jury as the trier of fact." Id. (citation omitted).  Moreover, it is evident from the verdict that the jury believed CW's testimony beyond a reasonable doubt.  See id.

CW testified that the earlier incident was difficult to talk about because it was more severe and that she reported it to her sister, but did not feel comfortable speaking to the interviewer about it.  CW also testified that she was "terrified"

about reporting the August 2 or 3 incident and that she did not want to upset her father, Joven. Finally, although Joven did testify that Ganitano helped him with groceries when he returned on August 9, 2014, such conduct may or may not be evidence of innocence, and the jury evidently did not find it sufficient to introduce a reasonable doubt as to Ganitano's guilt.

In sum, CW's testimony, along with the testimony of the other witnesses concerning their observations and the circumstances surrounding the alleged incidents, constituted credible evidence which was of sufficient quality and probative value to enable a person of reasonable caution to support the conclusion that Ganitano committed these offenses. Grace, 107 Hawai'i at 139, 111 P.3d at 34 (citation omitted).

(3) Ganitano alleges that certain statements made by the State during closing arguments constituted prosecutorial misconduct. Ganitano did not object to these remarks at trial. Therefore, we review Ganitano's allegations of prosecutorial misconduct for plain error. See, e.g., State v. Wakisaka, 102 Hawai'i 504, 513, 78 P.3d 317, 326 (2003) ("If defense counsel does not object at trial to prosecutorial misconduct, this court may nevertheless recognize such misconduct if plainly erroneous." (citation omitted)).

"[Appellate courts] evaluate [] claims of improper statements by prosecutors by first determining whether the statements are improper, and then determining whether the misconduct is harmless." State v. Tuua, 125 Hawai'i 10, 14, 250 P.3d 273, 277 (2011) (citation omitted); see also State v.

Schnabel, 127 Hawai'i 432, 452-53, 279 P.3d 1237, 1257-58 (2012) (determining whether the prosecutor's statements amounted to misconduct before determining whether the misconduct was harmless). If a statement is determined to be improper, then the following factors are considered in determining whether they were harmless beyond a reasonable doubt: "(1) the nature of the conduct; (2) the promptness of a curative instruction; and (3) the strength or weakness of the evidence against the defendant." Wakisaka, 102 Hawai'i at 513, 78 P.3d at 326 (citation omitted).

Ganitano first contends that the following statement of the Prosecutor, made in closing argument, was improper:

> A predator on the prowl. That's what this defendant was . . . . He targeted a young girl. He targeted a girl who was alone, a girl who was defenseless, a girl who trusted him, and a girl he knew would not tell.

During closing arguments, a prosecutor is

> permitted to draw reasonable inferences from the evidence and wide latitude is allowed in discussing the evidence. It is also within the bounds of legitimate argument for prosecutors to state, discuss, and comment on the evidence as well as to draw all reasonable inferences from the evidence. In other words, closing argument affords the prosecution (as well as the defense) the opportunity to persuade the jury that its theory of the case is valid, based upon the evidence adduced and all reasonable inferences that can be drawn therefrom.

State v. Rogan, 91 Hawai'i 405, 412-13, 984 P.2d 1231, 1238-39 (1999) (citations and internal quotation marks omitted).

The characterization of a defendant as a "predator" is not improper where it is supported by the evidence. See People v. Thomas, 281 P.3d 361, 385 (Cal. 2012) (references to the defendant as a "'predator,' a 'depraved predator,' a 'vile, nasty predator of women,'" were permissible as "'opprobrious epithets warranted by the evidence'" in a trial for, *inter alia*, rape,

kidnapping and murder); People v. Estevez, No. H021998, 2002 WL 31439824, at *9 (Cal. Ct. App. Oct. 31, 2002) (characterizing the defendant as a "sexual predator" in opening and closing in a rape trial was not improper). Indeed, in the commentary to HRS § 707-759 (2014), the legislature (**legislature**) used the word "predator" to describe "persons who seek out minors for sexual purposes."

Here, the statement that Ganitano was a predator was a reasonable inference and within the wide latitude that the State is allowed in discussing the evidence. See Rogan, 91 Hawai'i at 412, 984 P.2d at 1238. Moreover, it was supported by the evidence. See Thomas, 281 P.3d at 385. Testimony adduced at trial established that Ganitano, a much older man who was a trusted family friend, made sexual contact with CW on two occasions, when she was just fourteen years old. We conclude that the Prosecutor's reference to Ganitano as a predator was not improper.

Similarly, Ganitano argues that the Prosecutor acted improperly when she "portrayed CW as scared, defenseless, weak, vulnerable, and 'prey' for Ganitano." We reject this argument.

In State v. Bruce, where the defendants were charged with, inter alia, promoting prostitution, the prosecutor commented that the defendants treated the complaining witness like "a piece of property", and stated: "[b]ut she's not a piece of property. I mean, she's somebody's daughter, she's somebody's friend, she's a mother, she's a woman, she is a person, and she deserves to be treated properly." State v. Bruce, 141 Hawai'i

397, 408, 411 P.3d 300, 311 (2017) (emphasis omitted). The supreme court recognized that one of the central issues in the case was "whether McKinley had compelled [the complaining witness] to engage in prostitution against her will." Id. at 407, 411 P.3d at 310. The supreme court held that "when considered in context, the prosecutor's comments were relevant to the central issues at trial." Id. at 407, 411 P.3d at 310 (citation omitted).

Here, there was evidence that Ganitano sexually assaulted a fourteen-year-old girl, on one occasion when she was alone in her bedroom, and on a second occasion when she was home alone babysitting for two younger children. Noting her weakness, fear, and vulnerability to an adult friend of the family who was welcome in her home was within the Prosecutor's wide latitude allowed in discussing the evidence and helped explain why CW did not immediately report the first incident after the second incident occurred. Particularly in the context of the whole closing argument, we conclude that the Prosecutor's comments were relevant to the central issues at trial and were not improper.

Ganitano next contends that the Prosecutor's argument that the defense "came to court ready to play the blame game" constituted misconduct. We reject this contention. In context, the Prosecutor's colloquialism referred to the defense's theory and strategy to convince the jury that CW was not a credible witness and that her testimony describing the incidents of alleged abuse were either false or otherwise insufficient to

support Ganitano's conviction. We conclude that this statement did not constitute prosecutorial misconduct.

Finally, Ganitano argues that the Prosecutor misstated the law when she argued: "We have this law, Sexual Assault in the Third Degree, to protect minors like [CW] who are too scared, vulnerable, weak, to protect themselves." As the State contends, however, if anything, the Prosecutor's comment would be an alleged misstatement of the purpose of the law, rather than a mischaracterization of the law itself, as it did not misrepresent any of the elements of the offense or otherwise misstate the law that Ganitano was alleged to have violated.

The legislative history behind HRS § 707-732(1)(c) includes the following passage regarding the purpose of the statute:

> Your Committee further finds that minors many times get lured into sexual relations with someone who is significantly older. Your Committee believes that this measure is necessary to protect Hawaii's youth.

S. Stand. Comm. Rep. No. 1189, in 2001 Senate Journal, at 1392 (emphasis added).

Based on the legislative history, it appears that the purpose of the law was, at least in part, to protect minors who are too vulnerable to protect themselves. The Prosecutor's reference to this purpose did not constitute misconduct.

For these reasons, the Circuit Court's October 5, 2016 Judgment is affirmed.

DATED: Honolulu, Hawai'i, May 30, 2018.

On the briefs:

Emmanuel V. Tipon,
(Bilecki & Tipon),
for Defendant-Appellant.

Brian R. Vincent,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge